IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT DUTKEVITCH, a minor, by          :          CIVIL ACTION NO. **3:CV-07-1672**
and through his parent, Sharon            :
Dutkevitch, and SHARON                    :
DUTKEVITCH,                               :
                                          :          Magistrate Judge Blewit
              Plaintiffs                  :
                                          :
         v.                               :
                                          :
PA CYBER CHARTER SCHOOL, et al.,          :
                                          :
              Defendants                  :

<u>**MEMORANDUM AND ORDER**</u>

**I. Background.**

Plaintiffs Vincent Dutkevitch, and his mother Sharon Dutkevitch, originally filed this action on September 12, 2007, against the following Defendants: PA Cyber Charter School, Nick Trombetta, CEO, PA State Department of Education, Gerald Zahorchak, PA Secretary of Education, and Rebecca Manning, Director of Special Education, in their official and individual capacities. (Doc. 1.).  Vincent was a minor at the time this action was filed.[1]  Subsequently, Plaintiffs filed a Second Amended Complaint on May 1, 2008 (Doc. 41) and a Third Amended Complaint on October 13, 2008.  (Doc. 72).   Plaintiffs are proceeding on their Third Amended Complaint.

In their Third Amended Complaint, Plaintiffs assert claims under Section 504 of the Rehabilitation Act, 29 U.S.C. §794(Count I), Title II of the Americans with Disabilities Act, 42 U.S.C.

---

[1]As the Court noted in *Blunt v. Lower Marion School Dist.*, 559 F. Supp. 2d 548, 556, n. 3 (E. D. Pa. 2008), "the Supreme Court has recently clarified that parents do have substantive rights under the IDEA, which they may enforce."(citing *Winkelman v. Parma City Sch. Dist.*, –U.S.–, 127 S. Ct. 1994 (2007)).

§§ 12101, *et seq.* ("ADA") and the Fourteenth Amendment Equal Protection Clause, pursuant to

42 U.S.C. § 1983 (Count II), and Article I, § 26 of the Pennsylvania Constitution (Count III).[2]

On October 27, 2008, three Defendants, namely Pittston Area School District ("PASD"),

West Side Area Vo-Tech School ("WSVT"), and Elizabeth Ellis jointly filed a Motion to Dismiss

Plaintiffs' Third Amended Complaint. (Doc. 78). Defendants filed their 44-page support Brief on

November 10, 2008. (Doc. 81). Plaintiffs filed jointly their Answer to Defendants' Motion to

Dismiss with their opposition Brief on December 3, 2008. (Doc. 91).

On February 5, 2009, the Court issued the following Order:

> Based on the February 4, 2009 telephonic conference with the Court and counsel
> for all parties, and based on the representations of counsel that there are only
> three (3) Defendants remaining in the case, namely, West Side Area
> Vo-Tech School, Elizabeth Ellis and Pittston Area School District, and that the
> only remaining claims are the claims asserted against the three stated Defendants,
> IT IS HEREBY ORDERED THAT:
>
> 1. All Defendants and all claims, except for Defendants West Side Area
> Vo-Tech School, Elizabeth Elis, and Pittston Area School District and the claims
> against these three Defendants, ARE DISMISSED since they are settled;
>
> 2. The Doc. 73 Motion of Defendants, Pennsylvania Department of
> Education and Gerald Zahorchak, to Dismiss Plaintiff's Complaint is DEEMED MOOT
> in light of the settlement regarding the parties involved in this Motion;
>
> 3. Plaintiff's Doc. 90 Motion for Leave to Amend the Third Amended
> Complaint was WITHDRAWN by Plaintiff during the February 4, 2009
> telephonic conference;

---

[2]As Plaintiffs point out (Doc. 91, p. 3), they do not specifically assert a claim under the
IDEA in their Third Amended Complaint, but they state in the jurisdictional section of their latest
pleading that their "claims are also authorized and presented under the [IDEA]". (Doc. 72, p. 1,
¶ 1.). Plaintiffs also repeatedly reference the IDEA throughout their Third Amended Complaint.

4.  The Doc. 83 Motion to Dismiss Plaintiffs' Request to Moot and Not Respond to Defendants Pittston Area School District, West Side Area Vo-Tech School and Elizabeth Ellis' Motion to Dismiss is DEEMED MOOT since Plaintiffs' Doc. 90 Motion was withdrawn;

5.  The Court will decide the remaining ripe Motion, namely, the Doc. 78 Motion of Defendants Pittston Area School District and West Side Area Vo-Tech School to Dismiss Plaintiffs' Third Amended Complaint;

6.  The Clerk of Court is directed to terminate all Defendants except for Defendants Pittston Area School District, West Side Area Vo-Tech School, and Elizabeth Ellis;

7.  The Court extends the discovery deadline for forty-five (45) days beyond the current March 12, 2009, discovery deadline; and

8.  All other existing case management deadlines are extended for forty-five (45) days beyond their current dates.

(Doc. 97).

Upon Defendants' request, the Court held an on the record oral argument with respect to their Motion to Dismiss on March 11, 2009.  (Docs. 96, 98, 100 and 101).  Defendants' Motion to Dismiss is now ripe for disposition.[3]

Following oral argument, the Court issued an Order on March 11, 2009, and directed that:

AND NOW, this 11th day of March, 2009, based upon the stipulation between Plaintiff and remaining Defendants entered on the record during the March 11, 2009 oral argument regarding Defendants Pittston Area School District and West Side Area Vo-Tech School's Motion to Dismiss Plaintiff's Third Amended Complaint, IT IS HEREBY ORDERED THAT Defendant Elizabeth Jane Ellis, Administrative Director in her official and individual capacities, is DISMISSED from this case.

---

[3]The parties consented to the jurisdiction of the undersigned for all matters, including trial, pursuant to 28 U.S.C. § 636(c).  (Doc. 67).

3

(Doc. 101).

On March 16, 2009, Plaintiffs filed a Supplemental Answer to Defendants' Motion to Dismiss. (Doc. 102). On March 19, 2009, Defendants filed their Reply to Plaintiffs' Supplemental Answer. (Doc. 103).

Thus, the only two remaining Defendants are PASD and WSVT. As indicated, Defendant Ellis was dismissed following the March 11, 2009 oral argument. (Doc. 101). We refer to PASD and WSVT jointly as "Defendants" herein.

**II. Allegations of Third Amended Complaint against Defendants PASD and WSVT**

Plaintiffs allege that Plaintiff Vincent was a student with a disability, residing within PASD, who was denied admission to WSVT on the basis of his disabilities and on the basis of his enrollment in the PA Cyber Charter School during Grades 11 and 12. (Doc. 72, ¶ 4.). Plaintiffs state that Vincent was enrolled in PA Cyber Charter School since he was the victim of bullying at the public schools. (*Id*.).

Plaintiffs also allege that in September 2008, Vincent graduated from high school *via* the PA Cyber Charter School, pursuant to the Individuals with Disabilities Education Act ("IDEA"). (*Id*., ¶ 5.). Plaintiffs aver that WSVT denied him an application for enrollment for a computer course during the 2007-2008 school year and the Summer of 2008 based on a graduation policy that excluded him from enrollment at WSVT. (*Id*., ¶ 7.). Plaintiffs allege that PASD "refused to make necessary recommendation for [Vincent's] funding and placement in a vocational technical school." (*Id*., ¶ 8.). As a result of the alleged conduct of both WSVT and PASD, Plaintiffs aver that Vincent had to enroll in the Art Institute of Pittsburgh in October 2008.

4

Plaintiffs conclude as follows:

> 12.    Plaintiffs file this law suit because of their present financial hardship for the cost of Vincent's program at the Art Institute which is impacted by the loss of scholarship and other vocational secondary education benefits that Vincent was denied.  Plaintiffs also seek the loss of Vincent's vocational technical education which includes more than instructional hours, content and academics for specific course. The substantive portion of a vocational program would have increased Vincent's strengths, preferences and interests in the computer field. Vincent's vocational needs are an integral part of his ability to succeed in his present program at the Art Institute of Pittsburgh.

> 13.    Vincent lost the benefit of all the life skills and transition skills that are also part of vocational training for independent living and for other learning and performance behaviors:

>> for socialization, participation in clubs, scholarships, computer competitions, emotional and social support, learning how to believe in himself and a sense of belonging and spiritual support, learning industry standards and an opportunity for cooperative academic experiences with business leaders in the computer field.

(*Id.*, ¶'s 12.-13.).

Specifically, Plaintiffs' claims against Defendants PASD and WSVT under Section 504 of the Rehabilitation Act, 29 U.S.C. §794(Count I), are, in relevant part, as follows:

> 75.    The West Side Defendants denied admission to Vincent, denied him all the benefits of a vocational technical education, program and services as noted above, and subjected him to discrimination solely by reason of his need for disability related services as a disabled student with a unique special education program in Grade 11 and 12.

> 76.    Pittston Area School District denied admission to Vincent to attend AVTS, such as West Side or Wilkes Barre, denied him all the benefits of a vocational technical education, program and services as noted above, and subjected him to discrimination solely by reason of his need for disability related services as a disabled student with a unique special education program in Grades 11 and 12.

(Doc. 72, ¶'s 75.76.).

Plaintiffs' claims against Defendants PASD and WSVT under Title II of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq*. ("ADA") and   the Fourteenth Amendment Equal Protection Clause, pursuant to 42 U.S.C. § 1983 (Count II), are in relevant part as follows:

> 87.     Defendants West Side and Pittston, who receive federal funds, violated Plaintiffs' rights under the Americans with Disabilities Act and under the Fourteenth Amendment by failing to ensure that Plaintiff had an equal opportunity to participate in vocational education services and programs to the maximum extent appropriate for his abilities as a protected handicapped person.

> 88.     Defendants West Side and Pittston, and Defendant Zahorchak, in his official capacity, screened out Vincent on the basis of his handicap from fully and equally enjoying, *inter alia*, the (sic) all the privileges, advantages or accommodations of a vocational education.  42 U.S.C. §12182(b)(2)(A)(i).

> 89.     Defendants West Side and Pittston, and Defendant Zahorchak, in his official capacity, failed to protect Vincent from discrimination because of his disabilities and failed to provide him with reasonable accommodations and modifications in policies, practices or procedures for him to access a vocational education.  42 U.S.C. § 12182(b)(2)(A)(ii).

(Doc. 72, ¶'s 87.-88.).

Plaintiffs' claims against Defendants PASD and WSVT under Article I, § 26 of the Pennsylvania Constitution (Count III), are, in relevant part, as follows:

> 96.     As a result of the discriminatory conduct noted above, Defendants must be required by injunctive or other relief to change their policies, practices and procedures to provide, among other things, (a) access to vocational education programs and services for students such as Vincent on the basis of handicap and on the basis of the unique settings of their respective educational environments, such as virtual cyber charter schools and (b) adherence to Article 1 § 26 of the Pennsylvania Constitution governing 22 Pa Code 22 § 339.22(b)(1) (Special Vocational Plan), and Title 24 of the Pennsylvania School Code of 1949, PS 18-1805

and 1847, and 19-1925, with all of the remedies, procedures and rights
of each law, statute and code.

97.    At all times relevant to this action, Defendants maintained an
unwritten but official practice of the acts and omissions noted herein,
including a practice of discriminating against students such as Vincent
on the basis of handicap and ignoring parents such as Mrs.
Dutkevitch who advocates on behalf of her son, with or without
legal assistance.

(Doc. 72, ¶'s 96. -97.).[4]

As noted, Plaintiffs generally aver that since Plaintiff Vincent was a student with a disability,

their claims are also authorized and presented under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400, *et seq*. ("IDEA").[5]  (Doc. 72, ¶ 1.).

## III.  Motion to Dismiss Standards.

1.  *Rule 12(b)(1) Motion*

In  *James S. Ex rel. Thelma S. v. Sch. Dist. of Phila*., 559 F. Supp. 2d 600, 611 (E. D. Pa.

2008), the Court stated:

"A challenge to a complaint for failure to allege subject matter jurisdiction is
known as a facial' challenge, and must not be confused with a 'factual'
challenge contending that the court in fact lacks subject matter jurisdiction, no
matter what the complaint alleges...." *N.E. Hub Partners, L.P. v. CNG Transmission
Corp.*, 239 F.3d 333, 341 n. 7 (3d Cir.2001) (citing *Mortensen*, 549 F.2d at 891;

---

[4]Plaintiffs cannot seek monetary damages with respect to their claims  under Article I,
§ 26 of the Pennsylvania Constitution (Count III).  *See Moeller v. Bradford County,* 444 F. Supp.
2d 316 (M.D. Pa. 2006).   As indicated above, Plaintiffs seek "injunctive or other relief" against
Defendants in Count III.

[5]Effective July 1, 2005, this statute was amended by the Individuals with Disabilities
Education Improvement Act of 2004 Pub. L. No. 108-446.  *See Maria C. ex rel. Camacho v.
School Dist. of Philadelphia*, 142 Fed. Appx. 78, 79, n.  1  (3d Cir. 2005).

5A Wright & Miller, Federal Practice & Procedure § 350, at 212-18 (West 1990)).
Defendant District's Motion to Dismiss presents a factual challenge.
In assessing a Rule 12(b)(1) motion that presents a factual challenge to a court's
jurisdiction, the court is "free to weigh the evidence and satisfy itself as to the
existence of its power to hear the case .... [N]o presumptive truthfulness attaches to
plaintiff's allegations, and the existence of disputed material facts will not preclude
the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet
Group Int'l,* 227 F.3d at 69 (quoting *Mortensen,* 549 F.2d at 891).
In making this assessment, "the court [is] not confined to allegations in
the plaintiff's complaint, but [may] consider affidavits, depositions, and testimony
to resolve factual issues bearing on jurisdiction." *Gotha v. United States,* 115 F.3d
176, 179 (3d Cir.1997).

*2. Rule 12(b)(6) Motion*

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new

standard to dismiss, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*,

550 U.S. —, 127 S. Ct. 1955 (2007), as follows:

> As the United States Supreme Court recently held in
> *Bell Atlantic Corp. v. Twombly*, [550] U.S. —, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must
> be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege
> "enough facts to state a claim to relief that is plausible on
> its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard
> set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,
> 2 L.Ed.2d 80 (1957)). The court must accept as true all
> all allegations of the Complaint and all reasonable factual
> inferences must be viewed in the light most favorable to plaintiff.
> *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
> (3d Cir. 1985). The Court, however, need not accept inferences
> drawn by plaintiff if they are unsupported by the facts as set
> forth in the complaint. *See California Pub. Employee Ret. Sys. v.
> The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing
> *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906
> (3d Cir. 1997)). Nor must the court accept legal conclusions
> set forth as factual allegations. *Bell Atlantic Corp.*, 127 S.Ct.
> at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct.
> 2932, 92 L.Ed.2d 209 (1986)). "Factual allegations must be
> enough to raise a right to relief above the speculative level."

> *Bell Atlantic Corp.*, 127 S.Ct. at 1965.  Although the United
> States Supreme Court does "not require heightened fact pleading
> of specifics, [the Court does require] enough facts to state a claim
> to relief that is plausible on its face."  *Id* at 1974.

*See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 588 (M.D. Pa. 2008).

## IV. Discussion.

### 1.  *Exhaustion of Administrative Procedures*

The Court in *Brett S. v. The West Chester Area School Dist.*, 2006 WL 680936, *1  (E.D. Pa.),

stated:

> In order to receive federal education funding under the IDEA,
> a state must provide disabled children [FN2] with a "free appropriate
> public education" ("FAPE").  20 U.S.C. § 1412(a)(1).  "Free and
> appropriate public education" means "special education and
> related services" that:
>
> > FN2.  The IDEA defines "children with disabilities"
> > as children who need special education because of
> > "mental retardation, hearing impairments (including
> > deafness), speech or language impairments, visual
> > impairments (including blindness), serious emotional
> > disturbance, orthopedic impairments, autism,
> > traumatic brain injury, other health impairments, or
> > specific learning disabilities."  20 U.S.C. § 1401(3)(A).
>
> (A) have been provided at public expense, under public
> supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary, or secondary
> school education in the state involved; and
> (D) are provided in conformity with the individualized education
> program required under section 1414(d) of this title.
> 20 U.S.C. § 1401(8). [FN3] The primary mechanism for delivering
> a FAPE is through an individualized education program ("IEP"),
> which tailors educational services to meet the child's
> specific needs.  20 U.S.C. § 1414(d); *Ridgewood Bd. of Educ. v.
> N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).

> FN3. "Special education" is defined as "specifically designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child." 20 U.S.C. § 1401(25). "Related services" are defined as "such developmental, corrective and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." § 1401(22).

*See James S. Ex rel. Thelma S. v. Sch. Dist. of Phila.*, 559 F. Supp. 2d 600, 621 (E. D. Pa. 2008).

As stated, Plaintiffs state their present claims are authorized and presented under the IDEA. (Doc. 72, p. 1). Plaintiffs also assert claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 729. Plaintiffs aver that "Vincent is a student with a disability under the ADA and §504 ..., and is a student with a Specific Learning Disability under the IDEA, ... (classic Attention Deficit Hyperactivity Disorder)." (*Id.*, p. 5, ¶ 16.).

As the Court stated in *Colon v. Colonial Inter, Unit 20, 443 F. Supp. 2d 659, 665 (M.D. Pa. 2006)*:

> This statute prohibits discrimination against the disabled in federally funded programs. Specifically, the law provides:
>
> > No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .
> 29 U .S.C. § 794(a).
>
> The IDEA and section 504 provide equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled. *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995).

10

The Court in *James S.* stated:

> To ensure that local educational agencies comply with the
> IDEA's substantive provisions, the statute requires states to
> guarantee certain procedural rights in order to qualify for funding.
> Under the IDEA, complaints are reviewed at an impartial due
> process hearing conducted by the state or local education agency. *See*
> 20 U.S.C. § 1415(f); 34 C.F.R. § 300.511. If a due process hearing is
> conducted at the local level, an appeal may be taken to a state agency
> which must render a final decision within thirty days. *See* 20 U.S.C.
> § 1415(g)(1); 34 C.F.R. § 300.515(b). A party aggrieved by the state
> educational agency's decision may appeal to a federal or state court
> of competent jurisdiction. *See* 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516(a).

559 F. Supp. 2d at 612-13.

Further, "the provisions of the IDEA granting federal courts jurisdiction only permits suit by

a 'party aggrieved by the findings and decisions made' in the administrative process. 20 U.S.C.

§1415(i)(2)(A)." *Id*. at 613.

The *James S.* Court stated as follows with respect to the exhaustion requirement:

> The IDEA requires that a party exhaust administrative procedures
> before seeking relief in federal court. *See* 20 U.S.C. § 1415(i)(2); *Honig v.
> Doe*, 484 U.S. 305, 326-27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)
> ("[J]udicial review is normally not available under [§ 1415(i)(2) ] until all
> administrative proceedings are completed ...."). In Pennsylvania,
> exhausting administrative remedies consists of participating in a due
> process hearing and taking an appeal to the state appellate body. *See*
> 22 Pa.Code § 14.162; *Blunt v. Lower Merion Sch. Dist.*, No. 07-3100,
> 2008 WL 442109, *5 (E.D.Pa. Feb. 15, 2008) (describing two-level
> review process in Pennsylvania); *Kristi H. v. Tri-Valley Sch. Dist.*, 107
> F.Supp.2d 628, 631 (M.D.Pa.2000) (same). Further, before bringing
> suit under Section 504 or the ADA "seeking relief that is also available
> under the IDEA," a party must exhaust administrative remedies to the
> same extent as required under the IDEA. *See* 20 U.S.C. § 1415(*i*);
> 34 C.F.R. § 300.516(e). The IDEA administrative exhaustion requirement
> "allows a school district to bring its expertise to bear and affords the
> state an opportunity to correct its own mistakes." *McKellar v. Com. of
> Pennsylvania Dept. of Educ.*, No. 98-4161, 1999 WL 124381, *2

11

(E.D.Pa. Feb.23, 1999) (citing *McKart v. United States,* 395 U.S. 185, 193-95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

*Id.* at 615-16.

"The Third Circuit has recognized exceptions to the IDEA's exhaustion requirement" and our Plaintiffs claim they apply in this case. *Id.* at 616. With respect to the exceptions, the *James S.* Court stated:

> "Specifically, the Third Circuit has held that exhaustion may be excused where: (1) it "would be futile or inadequate"; (2) the "issue presented is purely a legal question"; (3) "the administrative agency cannot grant relief (e.g., hearing officer lacks authority to provide a remedy)" or (4) "exhaustion would work severe or irreparable harm upon a litigant." *Komninos v. Upper Saddle River Bd. of Educ.,* 13 F.3d 775, 778 (3d Cir.1994) (quotation marks and citations omitted)."

*Id.*

The IDEA exhaustion requirement is jurisdictional. *Id.* (citation omitted), and *Blunt v. Lower Marion School Dist.,* 559 F. Supp. 2d 548 (E.D. Pa. 2008)(dismissing unexhausted claims for lack of jurisdiction under Rule 12(b)(1)).

Exhaustion of administrative remedies is generally required prior to a federal action being filed such as the proceeding before the state *via* the Special Education Due Process Hearing. It is not disputed that Plaintiffs have not exhausted their administrative remedies with respect to their claims that WSVT improperly refused to give them an application for Vincent's enrollment to take computer courses and their claim that PASD had an obligation to explore how Vincent could participate in a vocational education. Thus, Plaintiffs failed to exhaust their claims against Defendants by pursuing any type of special education due process administrative litigation. *See*

*Kristi H. v. Tri-Valley School District*, 107 F. Supp. 2d 628 (M.D. Pa. 2000).[6]

At oral argument, Defendants stated that Plaintiffs did not exhaust their administrative remedies under the IDEA and that Plaintiffs had recourse with the state. Defendants argued that Plaintiffs should have appealed the refusal of WSVT to give Vincent an application to the Pennsylvania State Board of Education and that Plaintiffs did not do so.

Plaintiffs argued that there were no available administrative remedies available for them since Vincent was enrolled in the PA Cyber Charter School and since Vincent graduated from this school in September 2008. (See Doc. 91, p. 2).

Plaintiffs stated that they are excused from exhaustion in this case under the exceptions to exhaustion as outlined in the case of *Blunt v. Lower Marion School Dist.*, 559 F. Supp. 2d 548 (E.D. Pa. 2008). *See also James S., supra.*[7] In particular, Plaintiffs state that they are excused from exhaustion since they are asserting a legal matter and, since exhaustion is now futile in light of the fact that Vincent has graduated from high school and there is no relief available to him. Plaintiffs also contends that they had no recourse after WSVT would not enroll Vincent since WSVT refused to give his mother an application. Finally, at oral argument, Plaintiffs requested permission to

---

[6]Each state must establish a procedure where disputes involving the IDEA can be resolved through an administrative review hearing or "due process" hearing. 20 U.S.C. §§ 1415(f)-(i). Pennsylvania has implemented a two-tiered system where the local school district conducts an initial review. If appealed, the local district's decision is reviewed by a three-member Special Education Appeals Panel. 22 Pa. Code § 14.64. According to the IDEA, a civil action can only be brought in a federal district court after this two-tiered system has been exhausted. 20 U.S.C. § 1415(i)(2)(A). *Kristi*, 107 F. Supp. 2d at 631.

[7]This Court in *Kristi H. v. Tri-Valley School District*, 107 F. Supp. 2d 628, 631 (M.D. Pa. 2000), indicated that after the initial due process hearing, Plaintiff can appeal to the Special Education Appeals Panel.

amend their complaint a fourth time if necessary or the opportunity to conduct discovery regarding the exhaustion issue.

The Court declines Plaintiffs' request to conduct discovery on the exhaustion issue since exhaustion is not required if Plaintiffs seek compensatory damages.  In *Colon v. Colonial Inter, Unit 20, 443 F. Supp. 2d 659*, 668, the court stated that "[g]enerally, exhaustion is, in fact, necessary for an IDEA claim. *See* 20 U.S.C. §1414(f).  The Third Circuit Court of Appeals has held, however, that exhaustion is not necessary where the Plaintiffs seek compensatory damages."(citation omitted).

In *James S.*, the Court stated:

> "Although compensatory damages are available under Section 504 and the ADA, they are not available in IDEA administrative proceedings. *See W.B.*, 67 F.3d at 496; *J.F. v. Sch. Dist. of Philadelphia*, No. 98-1793, 2000 WL 361866, *7 (E.D. Pa. April 7, 2000) In *W.B.*, the Third Circuit held that exhaustion was excused where the parties had settled the plaintiffs' IDEA claims and the only issue remaining for the Court was the availability of damages under § 1983.FN11 67 F.3d at 495-96. The *W.B.* court held that the plaintiff was not required to exhaust IDEA's administrative procedures before seeking damages. *Id.* at 496.

559 F. Supp. 2d at 617-18(footnote omitted).

Our Plaintiffs' Third Amended Complaint (*See* Doc. 72) indicates that Plaintiffs seek compensatory damages and thus, exhaustion is not required with respect to the claims for damages since this relief is not available in an IDEA administrative proceeding. *Id*.  ("a Plaintiff has no obligation to exhaust IDEA remedies before pursuing claims for damages not available under the IDEA.") (citation omitted).

However, to the extent our Plaintiffs seek relief available in IDEA administrative proceedings, such as their request for "injunctive and declaratory relief ...under the ADA and § 504 ... in ensuring

the provision of vocational education services to handicapped students, such as Vincent",

"20 U.S.C. § 1415(i) precludes this Court from granting relief under Section 504 or the ADA 'that is also available under the IDEA' where a Plaintiff has not exhausted IDEA administrative procedures." *Id.* at 619.

In *Richter ex rel. Tate v. Sch. Dist. of City of Erie*, 2002 WL 655674, *6 (W. D. Pa.), the Court stated that injunctive relief was available in the IDEA administrative process and that monetary damages were not available in the IDEA administrative process. In the instant case, Plaintiffs seek remedies that are both available in the administrative process and unavailable in the administrative process.

Since the Court agrees with Defendants PASD and WSVT that Plaintiffs failed to exhaust their claims cognizable under the IDEA, § 1415(i) prohibits Plaintiffs "from seeking IDEA relief through the guise of related statutes." *James S.*, 559 F. Supp. 2d at 619. As the *James S.* Court stated, "[t]he Third Circuit has held that § 1415(i) bars Plaintiffs from 'circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other stature-e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA.'" *Id.* (citation omitted). The Court finds that our Plaintiffs have, in large part, asserted claims cognizable under the IDEA and have raised them as claims under Section 504, the ADA and §1983.

Therefore, any relief which our Plaintiffs seek in their Third Amended Complaint (Count I-III) which is available under the IDEA, such as their requests for injunctive relief, will be dismissed pursuant to § 1415(i). *James S.*, 559 F. Supp. 2d at 619. Thus, the Court will grant Defendants'

15

Motion to Dismiss Plaintiffs' Section 504, ADA and § 1983 claims, as well as any IDEA claims, in Counts I-III to the extent they seek relief available in IDEA administrative proceedings.[8]

### 2. *Failure to State Claims against Defendants*

Defendants argued that there was no link between Plaintiffs and PASD and WSVT.  They correctly stated that the Charter School was Vincent's Local Education Agency ("LEA"), and not PASD.  They contend that PASD and WSVT did not owe any obligation to Plaintiffs since Plaintiffs chose not to re-enroll Vincent in PASD at any relevant time.  Defendants also pointed out that Vincent had already received, at a local community college,  the computer training he sought to re-attend when he tried to apply to WSVT.[9]

Defendants stated that during all of the relevant times of this case, Plaintiff Vincent was enrolled with the PA Cyber Charter School and not with PASD and WSVT.  Defendants stated that even if Plaintiff Vincent was enrolled in PASD, it would not have sent him to WSVT but to another vocational technical school, namely PASD's feeder vocational technical school, Wilkes-Barre Vo-

---

[8]At oral argument, as stated, Plaintiffs requested permission to amend their Complaint a fourth time or to conduct discovery on the exhaustion issue.  Based on the discussion above, the Court  finds futility of any further amendment, Thus, since the Court  finds futility of any amendment of Plaintiffs' claims, it shall not grant Plaintiffs  leave to amend their pleading a fourth time. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004). The Court also  finds extreme prejudice to Defendants if a fourth amended complaint was permitted in this case which was originally filed on September 12, 2007.

[9]Plaintiffs conceded that Vincent had already received computer classes at a community college before he sought enrollment at WSVT for computer training.  However, Plaintiffs argued that Vincent also sought, in part,  the socializing skills he would have learned from vocational training, notwithstanding the fact that he had already received the computer training he was seeking at WSVT.  Plaintiffs contend that these extra skills Vincent would have learned at WSVT would greatly assist him during his present enrollment at the Art Institute of Pittsburgh.

Tech.  Defendants also argued that Plaintiffs do not properly allege that Vincent was treated differently than any similarly situated student and thus, Plaintiffs failed to state a Fourteenth Amendment equal protection claim.

Plaintiffs contended that WSVT denied Vincent admission based on his disabilities and based on a graduation policy that did not apply to him, *i.e.* WSVT's two-year graduation policy which required a student to pass two years of a vocational program to be eligible to graduate.[10]  (See Doc. 72, p. 9). Plaintiffs stated that WSVT did not make a reasonable accommodation of their policy which prevented Vincent from enrolling.   Plaintiffs stated that Vincent could not have gone to Wilkes-Barre Vo-Tech, the feeder vo-tech school for PASD,  since PASD did not recommend him for it.  Plaintiffs conceded that Vincent did not enroll in PASD at any relevant time of this case and, they acknowledged  that he was enrolled in the PA Cyber Charter School during all relevant times. Plaintiffs explained that Vincent resided  in PASD and therefore, PASD was involved with this case and had an obligation to assist Vincent with enrolling in a vo-tech school.[11]   Plaintiffs stated that the two remaining Defendants in the case, *i.e.* PASD and WSVT, are both liable for discriminating against Vincent based on his disabilities.   Plaintiffs state that WSVT is liable for denying him computer training based on an inapplicable graduation  policy, and that PASD is liable for failing

---

[10]During oral argument, Plaintiffs counsel represented that the two-year policy was no longer a policy at WSVT.  Defendants pointed out that PASD, the school district where Vincent resided, was not a participating school district within the boundaries of WSVT.

[11]As stated by the Court during oral argument, and as discussed below, Plaintiffs have failed to submit any persuasive authority for their proposition that PASD and WSVT owed Vincent a duty in this case regarding their claims.

to assist them in obtaining vocational training at WSVT for Vincent.

The Court agrees with Defendants that neither PASD nor WSVT owed any legal obligation to Vincent during any relevant time of this case. The Court finds that Plaintiffs' § 504 and ADA claims should be dismissed, as Defendants contend, for Plaintiffs' failure to state a claim since there are insufficient allegations that Defendants withheld from Vincent any educational services or benefits they owed to him because of his disabilities and that they excluded Vincent from any school programs or activities available to other students. The Court is well aware that Plaintiffs "need not establish that there has been an intent to discriminate in order to prevail" on their ADA and § 504 claims. *See James S.*, 559 F. Supp. 2d at 621. (citation omitted). However, in our case, the Court finds that Plaintiffs have failed to allege that Defendants withheld the vocational computer training from Vincent because of his disabilities. Rather, PASD was not Vincent's LEA and he was not enrolled in PASD. Thus, PASD was not required to make sure Vincent received the computer training at WSVT. Also, Plaintiffs admitted that WSVT refused to give Vincent's mother an application based on its two-year graduation policy, and not based on Vincent's disabilities.

In *James S.,* 559 F. Supp. 2d at 620, the Court stated:

> Section 504 provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). "In order to establish a violation of § 504 of the Rehabilitation Act, a plaintiff must prove that (1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 253 (3d Cir.1999). In *Molly L. v. Lower Merion Sch. Dist.,* this Court

observed that "[t]he substantive requirements of the Rehabilitation
Act in the education context are equivalent to the requirements set
forth in the [IDEA]. 194 F.Supp.2d 422, 426 (E.D.Pa.2002); *see also
Ridgewood,* 172 F.3d at 253 ("[T]here are few differences, if any,
between IDEA's affirmative duty and § 504's negative prohibition."); *W.B.,*
67 F.3d at 492-93 (same).

During oral argument, as Defendants recognize (Doc. 103, p. 2), the Court repeatedly asked counsel for Plaintiffs to provide case law for Plaintiffs' position that PASD and WSVT owed a legal obligation to Vincent. Following oral argument, pursuant to the Court's request, Plaintiffs submitted a Supplemental Brief offering case law for their argument that PASD and WSVT owed a legal obligation to Vincent. Plaintiffs filed their supplemental Brief on March 16, 2009 (Doc. 102) and Defendants filed their Response thereto on March 19, 2009. (Doc. 103).

As discussed by Defendants in their stated Response (Doc. 103), the Court agrees that since Vincent was not enrolled in PASD at any relevant time, since he was at all relevant times enrolled in the Charter School, and since the Charter School was his LEA, PASD owed no legal obligation to Vincent in this case. For the reasons explained in Defendants' Response (Doc. 103), the Court finds that Plaintiff has not submitted any persuasive case law regarding PASD's legal obligation in this case.[12]

Stated simply, Plaintiffs do not offer any persuasive case law that PASD was obliged to assist Vincent, a student enrolled in the Charter School (which was his LEA), in enrolling into WSVT for

---

[12]While the law is clear that PASD could not prohibit Vincent from participating in any extracurricular activity of PASD since he resided in PASD, Plaintiffs do not assert such a claim in this case. The computer training Vincent sought to re-take was at WSVT and PASD was not a participating school district within the boundaries of WSVT. *See Angstadt ex rel, Angstadt v. Midd-West Sch. Dist.,* 286 F. Supp. 2d 436 (M.D. Pa. 2003), aff'd. 377 F. 3d 338 (3d Cir. 2004) (citing the Pennsylvania School Code, 24 Pa. C.S.A. §17-1747-A(14)).

computer training merely because he resided in PASD. As pointed out at oral argument, WSVT was not even the feeder vocational school to which PASD referred its students, *i.e.* students who were enrolled in PASD. Further, notwithstanding Plaintiffs' claims that WSVT could have given Vincent additional needed skills, such as socializing skills, if it permitted him to enroll, the Court agrees with Defendants that WSVT had nothing to offer Vincent since he already completed, at a community college where his Charter School sent him, the same or similar computer courses he sought to re-take at WSVT.

Also, the Court agrees with Defendants and their rationale (Doc. 103, ¶6.) that Plaintiffs' Supplemental Brief (Doc. 102) does not provide any case law to support Plaintiffs' position that WSVT owed Vincent any legal obligation in this case.

For these reasons, the Court concurs with remaining Defendants, PASD and WSVT, that Plaintiffs' Third Amended Complaint should be dismissed with respect to the ADA and Section 504 claims, since this pleading fails to state any such claims against Defendants for which relief can be granted. *See L. v. Boyertown Area School Dist.*, 2009 WL 466386,*5 (E.D. Pa.)(court dismissed Plaintiffs' § 504 and ADA claims for "failure to allege facts to show that [school district] failed to establish or implement adequate policies, practices, or procedures to accommodate students with disabilities."[13]

---

[13]As discussed above in section 1., since only Plaintiffs' claims for damages under the ADA and Section 504 were remaining, these claims will also be dismissed.

3. *Fourteenth Amendment Equal Protection Claim*

The Court finds that Plaintiffs have not stated a cognizable Fourteenth Amendment equal protection claim against Defendants. (*See* Doc. 72, Count II). Plaintiffs allege that Defendants failed to protect Vincent from discrimination based on his disabilities and failed to provide him with access to a vocational education. (Doc. 72, p. 18). Plaintiffs have failed to allege that Vincent was treated differently by Defendants because of his disabilities. Rather, Plaintiffs repeatedly stated at oral argument that Vincent's mother was denied an application to WSVT based on a two-year policy that was erroneously applied to him and that PASD failed to intervene to assist them, even though Vincent's LEA was the Charter School and even though Vincent was not enrolled in PASD.

As the *Angstadt* Court stated:

> In reviewing an equal protection claim, we must first determine
> the appropriate standard of review. *Donatelli v. Mitchell,* 2 F.3d 508,
> 513 (3d Cir.1993). If the action in question does not burden
> a fundamental constitutional right or target a suspect or quasi-suspect
> class, the "challenged classification must be upheld 'if there is
> any reasonably conceivable state of facts that could provide a rational
> basis for the classification'" *Id.* (quoting *FCC v. Beach Communications, Inc.,*
> 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).
> Participation in extracurricular activities is not a fundamental right. *Palmer
> v. Merluzzi,* 868 F.2d 90, 96 (3d Cir.1989). Further, Megan's status as a
> cyber charter school student does not qualify as a suspect or
> quasi-suspect classification. *See Janicki v. Elizabeth Forward Sch. Dist.,*
> 322 F.3d 788, 790 (3d Cir.2003) (explaining that suspect classifications
> are those based on race, alienage or national origin).

286 F. Supp. 2d at 443.

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection
> violation, the plaintiff must ' . . . demonstrate that [he has] been
> treated differently by a state actor than others who are similarly

situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 equal protection claim require Plaintiffs to state Defendants PASD and WSVT intended to discriminate against Vincent, and later to prove this by either direct or circumstantial evidence. *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd.* 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F. Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Plaintiffs have not alleged facts from which it can be concluded that Vincent is a member of a protected class.  *See L. v. Boyertown Area School Dist.*, 2009 WL 466386,*6(Plaintiff, who was a student with a disability, was not a member of a protected class).  Thus, as the Court stated in *L. v. Boyertown Area School Dist.*, 2009 WL 466386,*6:

> Plaintiffs do not allege discrimination based on membership in a protected class. Thus, in order to prevail on an equal protection claim, Plaintiffs must show that Defendants treated B.L. differently than other similarly situated individuals, that Defendants did so intentionally, and that there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir.2006). The Supreme Court has held that this standard applies to "class of one" equal protection claims. *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

> The Third Circuit agrees that "the Supreme Court's holding in *Olech* does not establish a requirement that a plaintiff identify in a complaint actual instances where others have been treated differently for purposes of equal protection." *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir.2008) (citing *DeMuria v. Hawkes,* 328 F.3d 704, 707 (2d Cir.2003). However, this relaxed standard does not enable Plaintiffs to circumvent the basic requirements that "a formulaic recitation of a cause of action's elements" is not sufficient to survive a motion to dismiss and that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

As in *L. v. Boyertown Area School Dist.*, the Court finds that our Plaintiffs do not allege that Vincent was treated differently by Defendants than similarly situated students on the basis of his disabilities (ADHD).[14]  In short, Plaintiffs do not allege that others similarly situated, *i.e.* students who were not enrolled in PASD and who did not have PASD as their LEA, were assisted by PASD to gain admission into WSVT for vocational training.  Nor do Plaintiffs allege that WSVT treated Vincent differently than similarly situated students on the basis of his disabilities.  Rather, Plaintiffs admitted that WSVT refused to give Vincent's mother an application for the computer program due to its two-year graduation policy, and not due to Vincent's disabilities.  Plaintiffs essentially admitted that there was a rationale basis for WSVT's treatment of Vincent despite their contention that the graduation policy did not apply.  Indeed, as in *James S.*, "the Court is mindful of the Supreme Court's admonition in [*Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366-67 (2001)] that the requirement of special accommodations for the disabled must come from positive law." 559 F. Supp. 2d at 626.  This Court has agreed with Defendants and found that Defendants were not under any legal obligation to Vincent to provide him with a second round of computer training and to assist him in gaining enrollment into a vocational computer training program.  The Court has found that Plaintiffs' Supplemental Brief did not persuasively identify any positive law which, under the circumstances of our case, imposed a legal duty on Defendants to provide Vincent with vocational computer training and to assist Vincent in obtaining such training.

---

[14]Since we have stated the relevant portions of Plaintiffs' Count II above, we do not repeat them.

Thus, the Court finds that the allegations of our Plaintiffs as against the two remaining Defendants are not sufficient since they have failed to state that Defendants treated Vincent differently than other similarly situated individuals. *See L. v. Boyertown Area School Dist., supra* at *6(Plaintiffs "must allege facts from which it can be deduced that [Plaintiff student] was treated differently than other similarly situated [disabled students]". Our Plaintiffs have also failed to allege any facts to show that Vincent was treated in a manner by Defendants that had no rational basis.

It was conceded at oral argument that WSVT denied Vincent's mother an application for Vincent enrollment in its computer program based solely on its two-year graduation policy and not based on his disabilities. There was no argument that WSVT failed to give Vincent's mother an application or that PASD failed to intervene to assist Vincent in getting an application based on his disabilities or that he was intentionally singled out from other prospective applicants of WSVT based on his disabilities.

Thus, the Court will dismiss Plaintiffs' Fourteenth Amendment Equal Protection claim under Rule 12(b)(6). *See L. v. Boyertown Area School Dist., supra* at *6.

*4.   State Law Claim  under Article I, Section 26 of the Pennsylvania Constitution*

Finally, Plaintiffs' Count III is a state law against Defendants under Article I, Section 26 of the Pennsylvania Constitution. In Count III, Plaintiffs seek both compensatory damages, as well as injunctive and/or declaratory relief. (Doc. 72, pp. 20-21). As noted above, Plaintiffs can seek injunctive relief under the Pennsylvania Constitution. *See Moeller v. Bradford Co.*, 444 F. Supp.2d 316 (M.D. Pa.). However, they cannot seek monetary damages under the Pennsylvania Constitution.

25

Insofar as Plaintiffs are attempting to raise a claim under the Pennsylvania Constitution for damages, the Court will dismiss it.  In *Bowers v. City of Phila.*, 2008 WL 5210256, *8 (E. D. Pa.), the Court recently stated:

> "To date, neither Pennsylvania statutory a authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Dillon v. Homeowner's Select*, 957 A.2d 772, 780 n. 11 (Pa. Super. Ct. 2008) (*quoting Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006), *appeal denied*, 589 Pa. 741, 909 A.2d 1291 (Pa. 2006)).  Accordingly, we agree with Defendants' undisputed assertion that Plaintiff's claims for damages under the Pennsylvania Constitution fail as a matter of law.  *See Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 WL 4889023, at * 10 (E.D. Pa. Nov. 12, 2008) (holding that "there is no private cause of action for damages arising from violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution") (citations omitted); *Alvarez v. City of Phila.*, No. 07-0493, 2008 WL 4347529, at * 13 (E.D. Pa. Sept. 23, 2008) (granting summary judgment in favor of defendant since "Pennsylvania does not recognize a private right of action for monetary damages for violation fo the Pennsylvania Constitution"); *Douris v. Schweiker*, 229 F.Supp.2d 391, 405 (E.D. Pa. 2002) (explaining that although Pennsylvania courts have not yet addressed the issue, federal courts have consistently held that no private cause of action for damages is available under the Pennsylvania Constitution); *Kelleher v. City of Reading*, No. 01-3386, 2001 WL 1132401, at * 3 (E.D. Pa. Sept. 24, 2001) (noting that "the federal courts in this Circuit . . .  have concluded that there is no such private cause of action for damages under the Pennsylvania Constitution," and citing cases); *Pendrell v. Chatham Coll.*, 386 F. Supp. 341, 344 (W.D. Pa. 1974) (rejecting Pennsylvania constitutional claim for damages and noting that plaintiff could cite no authority that implies such a cause of action).

Thus, any claim for damages that Plaintiffs make in Count III under the Pennsylvania Constitution must  be dismissed as a matter of law.  *See Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327 and note 13 (M.D. Pa.)("Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983,

which provides a private right of action for a federal constitutional violation.")(Citations omitted).

Since the Court is dismissing Plaintiffs' federal claims in Count I and II over which the Court has original jurisdiction, it will decline to exercise jurisdiction over Plaintiffs' remaining state law claim in Count III insofar as they seek injunctive relief against Defendants.

As the District Court in *Angstadt* stated:

> In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court found that if ... federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130 Indeed, 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if it has "dismissed all claims over which it has original jurisdiction." Because we have dismissed all federal claims in the instant case, it is clear that we may decline to exercise supplemental jurisdiction over the state claim presented in Count IV.

286 F. Supp. 2d at 444-45.

Accordingly, the Court will grant the Motion to Dismiss the Third Amended Complaint of Defendants PASD and WSVT pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. 78) with respect to Counts I and II. The Court will dismiss Plaintiffs' claim for monetary damages in their Count III, state law claim under the Pennsylvania Constitution. The Court will decline to exercise supplemental jurisdiction over Count III insofar as Plaintiffs seek injunctive relief, and thus will dismiss this portion of Count III, without prejudice.

An appropriate Order follows.

> s/ Thomas M. Blewitt
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: April 8, 2009**

27

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT DUTKEVITCH, a minor, by        :        CIVIL ACTION NO. **3:CV-07-1672**
and through his parent, Sharon          :
Dutkevitch, and SHARON                  :
DUTKEVITCH,                             :
                                        :        Magistrate Judge Blewit
                Plaintiffs              :
                                        :
        v.                              :
                                        :
PA CYBER CHARTER SCHOOL, et al.,        :
                                        :
                Defendants              :

## ORDER

**AND NOW,** this 8th day of **April, 2009**, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss the Third Amended Complaint of Defendants PASD and WSVT pursuant to Rules 12(b)(1) and 12(b)(6) **(Doc. 78)** is **GRANTED** with respect to Counts I and II.  Plaintiffs' claim for monetary damages in Count III, state law claim under the Pennsylvania Constitution, is **DISMISSED.** The Court declines to exercise supplemental jurisdiction over Count III insofar as Plaintiffs seek injunctive relief.  Therefore, this portion of Count III is **DISMISSED** without prejudice.  The Clerk of Court is directed to close this case.

                        **s/ Thomas M. Blewitt**
                        **THOMAS M. BLEWITT**
                        **United States Magistrate Judge**

**Dated: April 8, 2009**